Wagenheim, Appellee,
*v.* Alexander Grant & Company,
Appellant.

Consolidata Services, Inc.,
Appellee,
*v.* Alexander Grant & Company,
Appellant.

(Nos. 82AP-1039 and -1040 — Decided December 15, 1983.)

*Isaac, Graham & Nester* and *Frederick M. Isaac,* for appellee Joel S. Wagenheim.

*Strip, Fargo, Schulman & Hoppers Co., L.P.A.,* and *A.C. Strip,* for appellee Consolidata Services, Inc.

*Chester, Hoffman & Willcox, Richard C. Addison, Keith McNamara, Mayer, Brown & Platt, Watson B. Tucker, Stanley J. Parzen* and *Hope G. Nightingale,* for appellant Alexander Grant & Co.

STRAUSBAUGH, J. The defendant, Alexander Grant & Company, brings this appeal from the trial court's denial of its motion for judgment notwithstanding the verdict and/or new trial, in favor of both plaintiffs, Consolidata Services, Inc., and Joel Wagenheim. The cases of *Joel Wagenheim* v. *Alexander Grant & Company* (case No. 82AP-1039) and *Consolidata Services, Inc.* v. *Alexander Grant & Company* (case No. 82AP-1040) were consolidated for trial and tried to a jury on September 22, 1981.

Consolidata Services, Inc. (hereinafter referred to as "CDS"), was established in Ohio in 1970 by plaintiff Joel S. Wagenheim and initially was created to provide bookkeeping services to small and medium-sized businesses. Later, it expanded its operations and commenced handling company payroll distributions. CDS continued to provide payroll services until it was forced into receivership in February 1978. Wagenheim was also the co-signer or guarantor on a variety of notes on behalf of CDS. Even though he later relinquished all

control in the corporation in 1976, Wagenheim maintained a security interest in the stock of CDS as collateral for the sale of his ownership interest, and remained available as a consultant to the management of CDS.

With each new payroll client of CDS, it was initially required that a deposit be given to insure that there would always be a sufficient amount of money to cover the payroll checks distributed should the cash advanced for each month be delayed. The deposits were not kept separately, and the service contracts specifically provided that the customers had no right to any interest on the deposit while it was held by CDS. Also, the contracts placed no restrictions on the use of the deposits by CDS except that, upon termination of their contractual relationship, the deposits would be returned within thirty days.

Alexander Grant & Company (hereinafter called "Alexander Grant"), the defendant, is a major accounting firm that provided tax and other business-related services to both CDS and Wagenheim. Many of the clients who used CDS's payroll services were also clients of Alexander Grant (hereinafter referred to as "mutual clients") and, in fact, many had chosen Alexander Grant upon the recommendation of CDS and vice versa.

On January 23, 1978, a meeting was held between several representatives from Alexander Grant and the president of CDS, Tom Ryan, to discuss an outstanding debt owed by CDS to the defendant for past services and to discuss arrangements for the rest of the year. At the meeting, Ryan provided the representatives with a financial statement from CDS for the latter part of 1977 showing its financial status. From the statement, Alexander Grant's accountants determined that CDS was $150,000 short of cash in its payroll accounts based upon the payroll funds

received and amounts owed as shown in the statement. Acting on the advice of their in-house counsel, the accountants from Alexander Grant contacted Ryan and asked that CDS immediately disclose its cash flow problems to its clients before any further funds were received. Ryan refused to make the disclosure and suggested that Wagenheim be contacted and advised of the problem.

On February 6, 1978, another meeting was held between the Alexander Grant representatives and Ryan, but this time with Wagenheim also present. At the meeting, the representatives from Alexander Grant again insisted that the disclosure be made. Wagenheim refused to authorize the disclosure and asked Alexander Grant not to do so. Wagenheim also asked that he be given some time to formulate a plan to raise the missing money, and that if it later became necessary, he personally would notify the clients of the problem. It is unclear from the testimony whether the defendant actually agreed to wait and give the plaintiffs some additional time to solve the problem of the money deficiency. Soon after the meeting, Ryan, at the advice of his counsel, resigned as the sole officer and director of CDS.

The next day, without notifying either Wagenheim or anyone at CDS, the defendant began to call its mutual clients and advise them not to send additional payroll funds to CDS, and to retain their payroll records. Several other mutual clients who had no funds on deposit with CDS were also called. Some of those contacted called CDS to inquire why such advice had been given by defendant and were then told that CDS had a cash flow problem but was attempting to devise a solution. Most of the clients refused to continue their relationship with CDS and, subsequently, cancelled their contracts. Ten days after the phone calls were made, CDS terminated its operations and closed down

its office. There was no evidence presented that prior to the phone calls CDS had ever failed to fulfill its payroll obligations to its clients or had ever been unable to return any of its customers' deposits. On February 9, 1978, the plaintiffs each received a letter from the defendant stating that Alexander Grant was terminating their relationship and that its accounting services would no longer be provided in the future.

On February 6, 1979, both Wagenheim and CDS filed their respective complaints against the defendant. Their consolidated cases were tried before a jury commencing on September 22, 1981. During the trial, the defendant moved twice for a directed verdict, once at the close of the plaintiffs' case and again before final argument. The defendant also moved twice for a mistrial, first because of the improper testimony of an expert witness and because necessary parties were not joined in the action, and second, for misconduct on the part of CDS's counsel. All motions were denied and, on October 6, the jury returned a verdict in favor of plaintiffs, awarding $350,000 in compensatory damages to CDS, and $220,000 in compensatory damages and $750,000 in punitive damages to Wagenheim. The defendant then moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The defendant's motion was again denied by the court in an order issued and filed on November 29, 1982. From the trial court's denial of its motion for judgment notwithstanding the verdict and/or a new trial, the defendant brings this appeal raising the following eight assignments of error:

"1. The judgment in favor of Wagenheim is contrary to law because [Alexander] Grant breached no duty in contract or tort to Wagenheim.

"2. The trial court incorrectly interpreted and applied the law regarding punitive damages.

"3. Errors by the trial court in instructions to the jury.

"4. The judgment in favor of CDS is contrary to law.

"A. The duty of confidentiality is not absolute.

"B. The disclosure was made to protect third parties and did not violate any duty of non-disclosure.

"5. The compensatory damages award to CDS is speculative and contrary to law.

"6. The compensatory damages awards to CDS and Wagenheim both are duplicative and are contrary to law because necessary parties were not joined.

"7. The trial court erred in the admission of alleged expert testimony.

"8. There was improper conduct of counsel at trial."

We shall consider first defendant's fourth assignment of error, since much of this dispute centers around its outcome. Defendant asserts in its fourth assignment of error that the judgment in favor of CDS was contrary to law, and that no cause of action exists placing liability upon an accountant for the disclosure of confidential information obtained from a client during their association in order to protect the interests of certain third parties.

As has been pointed out by both the parties, the statutory and case law in Ohio, as well as in other states, is void of any discussion concerning such cause of action; and, therefore, this case appears to be one of first impression in the United States. However, this court recognizes that the legal basis upon which such liability could be established exists. It is implied in every contractual relationship between an accountant and his client that a general duty exists not to make extra-judicial disclosures of information acquired in the course of their professional relationship, and that a breach of that duty by an accountant may give rise to a cause of action.

A client should be entitled to freely disclose information concerning his financial status to his accountant

without fear that such information will be exposed to the public. When the plaintiff, CDS, contracted with the defendant for the performance of certain accounting services, the defendant was under a general duty not to disclose information about the financial status of the plaintiff obtained as a result of their relationship. This is not to say that a client enjoys an absolute right, but rather that he possesses a limited right against such a disclosure, subject to exceptions prompted by the supervening interests of the public.

For instance, the disclosure of confidential information would not be prohibited when it is necessary and relevant to the resolution of a litigated issue. Ohio recognizes no statutory or common-law privilege prohibiting an accountant from revealing in a court of justice information acquired during an accountant-client relationship. It is the policy of this state that in the absence of a privilege, a witness may not refuse to testify to pertinent facts in a judicial proceeding merely because such testimony involves information obtained in confidence from another party. *In re Frye* (1951), 155 Ohio St. 345 [44 O.O. 320]. The public's interest in the testimonial disclosure of such information is deemed to be paramount to any consideration of the secrecy or confidence of the communication. 81 American Jurisprudence 2d (1976) 181, 182, Witnesses, Section 141. However, the absence of any accountant-client privilege does not deny a cause of action to the client for the non-judicial disclosure of confidential information obtained during their association.

A contractual relationship exists between an accountant and his client and, as such, an accountant's liability to his client is determined by the extent of their contractual relationship and the duties imposed by law upon accountants. 1 American Jurisprudence 2d (1962) 362, Accountants, Section 10. After reviewing the evidence in a light most favorable to the plaintiffs and with deference to the actions of the trial court below as is necessary in this appeal, we find that an accountant-client relationship existed between Alexander Grant and CDS and continued, as such, up to the time that the defendant notified the plaintiff by letter, on February 9, 1978, terminating their relationship. While no express written service agreement was ever signed, no such express written contract was needed. Defendant and CDS maintained an ongoing business relationship whereby services were rendered on a continual basis. As in the legal profession, the relationship that an accountant establishes with his client does not cease merely because the specific services provided at that time have been completed. The meeting between the representatives from Alexander Grant and Ryan on January 23, 1978, was conducted in furtherance of their professional relationship for purposes of discussing the payment of an overdue debt and to make other arrangements for future services. At that meeting, a financial statement from CDS was given to defendant's representatives and the sensitive information concerning the financial status of CDS was disclosed.

The legal obligations that flow from an accountant's business relationships necessarily arise from an understanding between the parties of the objectives to be achieved and the expectations that govern their achievement. As has been created in both the legal and medical professions, the State Accountancy Board has promulgated its own code of professional conduct, and with the recognition of those duties therein expressed comes the recognition that such conduct is expected by the public.

Ohio Adm. Code Chapter 4701-11 sets forth the ethical standards adopted by the State Accountancy Board and is modeled after the standards established by the American Institute of Certified Public Accountants. Ohio Adm. Code

4701-11-02(A), confidential client information, states:

"A certified public accountant or public accountant shall not disclose any confidential information obtained in the course of a professional engagement except with the consent of the client."

Indeed, a mere breach of the ethical concepts established by the accountancy board does not provide a cause of action for misconduct; however, these standards do give credence to the proposition that it is within the expectations of both parties involved that these restrictions will not be violated. This is consistent also with the fact that the personnel manual for Alexander Grant states:

"Alexander Grant & Company subscribes fully to the Code of Professional Ethics of the American Institute of Certified Public Accountants, and to the codes of societies of the various states in which we practice."

In essence, there is a reasonable expectation that Alexander Grant in providing accounting services to the public will conduct itself in a professional manner consistent with those standards established within the state. As a result, there is a legal obligation existing in every accountant-client relationship in which it participates, unless specifically excluded, that all information communicated to the defendant by its client in confidence should not be disclosed without the client's prior consent.

Although not cited by either party, R.C. 4701.19 provides:

"All statements, records, schedules, working papers, and memoranda made by a certified public accountant or public accountant incident to or in the course of professional service to clients by such accountant, except reports submitted by a certified public accountant or public accountant to a client, shall be and remain the property of such accountant, in the absence of an express agreement between such accountant and the client to the contrary. *No such statement,*

*record, schedule, working paper or memorandum shall be sold, transferred or bequeathed, without the consent of the client or his personal representative or assignee, to anyone other than one or more surviving partners or new partners of such accountant."* (Emphasis added.)

R.C. 4701.19 expresses the policy of this state that information contained within the written materials prepared by an accountant for his client may not be relinquished by the sale or transfer of these documents without the prior consent of the client. Based upon the reasonable expectations of the parties involved, and the public policy against such action, a duty is imposed by law upon an accountant not to wrongfully disclose information given to him in confidence by his client. The preservation of a client's confidential information is not a mere ethical duty, it is a legal duty as well. The unauthorized disclosure of any secrets or other confidential information obtained during the professional association of an accountant and his client will give rise to an action for breach of contract.

While defendant did not specifically disclose any confidential communications concerning CDS to its clients, the advice that it gave was based upon such information. Because of its superior knowledge, the warnings given by Alexander Grant were heeded with almost no hesitation by its clients and reasonably so. Thus, by using the confidential information obtained from CDS, and advising its clients to cease any further business dealings with the plaintiff, its actions were equivalent to, or perhaps even worse than, a complete disclosure of CDS's financial status to the mutual clients—because, without a complete disclosure, the mutual clients were unable to make an independent evaluation as to what course of action should be pursued.

Although the duty of confidentiality

implied in an accountant-client relationship is favored, this court recognizes that such duty is not absolute. Overriding public interests may exist to which confidentiality must yield. Defendant asserts that the disclosures were necessary and justified because they were made to protect the overriding interests of the mutual clients. Defendant cites the insolvency of CDS, the absence of any officers or directors after Ryan's resignation, and certain questionable activities within the corporation as the bases for the disclosures. It claims that, as of February 6, 1978, CDS's financial situation was serious, and in order to keep its mutual clients from sustaining any further financial losses than they were already exposed to, Alexander Grant felt that it was necessary to advise them to cease any further dealings with CDS. Defendant was also aware of the fact that CDS would, in all probability, be forced to close down if a majority of the clients contacted followed its advice. In effect, defendant made a conscious decision to sacrifice one client for the protection and advancement of others.

The mere fact that CDS was insolvent does not in itself justify the disclosure of that corporation's financial status by the defendant to CDS's clients, without some further investigation into the business activities of the corporation to determine if, indeed, a fraud was being committed upon the mutual clients and if they were in immediate danger of suffering significant financial losses from a continued association with CDS. "There is substantial authority to the effect that mere silence as to one's financial status, solvency, and credit does not amount to fraud. * * *" 37 American Jurisprudence 2d (1968) 229, Fraud and Deceit, Section 171. Certainly, if CDS were so insolvent that it had no reasonable expectations or intentions of fulfilling its contractual obligations, then it would be fraud for CDS to fail to disclose its insolvency. However, as noted by the Minnesota Supreme Court in *Richfield Bank & Trust Co.* v. *Sjogren* (1976), 309 Minn. 362, 368, 244 N.W. 2d 648, 651, when dealing with the liability of a bank for the disclosure of information concerning the financial condition of its depositors, a distinction must be made between "known irretrievable insolvency" and insolvency accompanied by the reasonable belief that, by continuing the business, solvency will be restored. In this case, although there was some evidence presented by defendant that it knew or could reasonably have believed that CDS was irretrievably insolvent and had no reasonable expectation of fulfilling its contractual obligations with its payroll clients, we find that there was sufficient evidence in the record that CDS could have regained its solvency and obtained the cash needed to balance the accounts of its payroll clients.

As for the additional factors cited by defendant, Ryan's resignation could not in itself or even in conjunction with the other factors cited have reasonably justified Alexander Grant's decision to call the mutual clients. Ryan had only resigned the day before. No investigation was conducted as to who would replace him or when a replacement would be chosen or how the business would be affected. Defendant also claims that CDS's books were inaccurate and incomplete and that certain questionable loans had been made to individuals within the corporation. However, no further testimony was given or evidence presented to substantiate these claims or show their severity. Accordingly, the defendant's fourth assignment of error is overruled.

In its first assignment of error, defendant contends that the verdict rendered in favor of plaintiff Wagenheim is contrary to law, and that at no time during their association did it owe a duty, either in contract or tort, to Wagenheim

not to disclose the information obtained from CDS. While defendant owed a duty of confidentiality to CDS, whether defendant owed any duty to Wagenheim to refrain from making the phone calls to the mutual clients is a different question.

In support of his claim against defendant, Wagenheim cites the recent Supreme Court case of *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154 [24 O.O. 3d 268]. In the syllabus of *Haddon View*, the court states:

"An accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen."

*Haddon View* dealt with the issue of whether an accountant could be held liable to the limited partners in a partnership for which accounting services had been performed. While the court held the defendant liable, it emphasized the fact that the plaintiffs were members of a definable and contemplated group whose reliance upon certain reports and audits prepared by the defendant were specifically foreseen: "* * * the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes. * * *" *Id.* at 157.

The facts in *Haddon View* are clearly distinguishable from the facts in the case at bar. None of the accounting services performed by the defendant specifically for CDS was cited as the cause of the injuries sustained by Wagenheim. It was defendant's breach of its duty of confidentiality to CDS that was claimed to have caused the damages which Wagenheim now seeks to recover. *Haddon View* cannot reasonably be interpreted to support the proposition that the defendant should be held liable for damages allegedly inflicted upon Wagenheim as a result of the defendant's breach of its duty of confidentiality to CDS.

Plaintiff Wagenheim, in his defense of the verdict as well as the trial court in its instructions, relies upon a decision of the Hamilton County Court of Appeals, *Hunsicker* v. *Buckeye Union Cas Co.* (1953), 95 Ohio App. 241, 244 [53 O.O. 185], which states that there is a duty recognized in every contract that each party will fulfill his obligations with care, skill, and faithfulness, and that the breach of such a duty will give rise to a cause of action in tort. While we accept the *Hunsicker* decision, this court does not agree that liability exists in this case. Even assuming that defendant and plaintiff Wagenheim were in a contractual relationship, the record is void of any indication that the defendant did not fulfill its obligations with the requisite care, skill, and faithfulness required by law. The actions complained of involve the disclosure of information obtained by defendant during the course of its relationship with CDS. None of the information obtained by defendant and used in its decision to advise the other clients to terminate their business relationships with CDS was obtained through defendant's association with Wagenheim, nor did any of the actions complained of arise out of services provided to Wagenheim.

It cannot reasonably be implied from the relationship of an accountant and his client that merely because of their association an accountant may be held liable for actions taken in regard to other business transactions in which he is involved that consequently may expose that client to loss or injury. A large accounting firm like Alexander Grant is involved in providing services to a large number of clients with a wide range of needs and interests, and to require that each client's interest must be evaluated and represented fully in all matters in

which the accounting firm may find itself would create an insurmountable obstacle to its existence. Therefore, even after construing the evidence most strongly in favor of plaintiff Wagenheim, reasonable minds could come to but one conclusion, that being that the defendant is not liable for the damages complained of by plaintiff Wagenheim. Accordingly, the defendant's first assignment of error is sustained.

In its second assignment of error, the defendant asserts that the trial court erred in allowing the jury to award punitive damages to plaintiff Wagenheim. While it is well settled in this state that punitive damages may be awarded in tort cases involving fraud, malice, or insult, it is also recognized that the employment of punitive and exemplary damages is vulnerable to widespread abuse and that the courts must be careful not to allow such damages to be misapplied. *Logsdon* v. *Graham Ford Co.* (1978), 54 Ohio St. 2d 336, 341 [8 O.O.3d 349].

Punitive damages may be awarded only when compensatory damages have been proven and properly asserted against the party from whom recovery is sought. *Richard* v. *Hunter* (1949), 151 Ohio St. 185 [39 O.O.24]. As previously discussed, this court can find no precedence either in tort or contract to impose liability upon the defendant for the injuries allegedly suffered by plaintiff Wagenheim. Therefore, with no basis upon which to find compensatory damages for the plaintiff, it would be improper to allow the jury to impose punitive damages. However, even if liability in tort could be established, the trial court still erred by allowing the jury to award punitive damages.

Actual malice is an essential element in awarding punitive damages for the tortious conduct of a defendant, and only if there has been sufficient evidence of malice should the question of punitive damages ever be submitted to the jury.

*Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 471 [21 O.O.3d 285]. Of course, what conduct constitutes malice sufficient to sustain an award of punitive damages is the critical issue. It is stated in *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 184 [71 O.O.2d 174], that malice is "* * * ' "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons" ' * * *." While the Supreme Court has also been quick to emphasize that malice may be implied from conduct or surrounding circumstances, the evidence must be sufficient to demonstrate the requisite intention or deliberation necessary to send the case to the jury. *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 137-138 [24 O.O.3d 239].

In *Detling*, it was stated, at 136-138, that where the conduct of the defendant involves a conscious and deliberate disregard for the interests of others, such conduct may be characterized as wanton and willful and may, therefore, be sufficient to supply the required circumstances of aggravation or outrage necessary to establish malice. Certainly, here, the defendant's actions were deliberate in that a conscious decision was made on the part of Alexander Grant to advise its clients to cease any further business dealings with CDS. However, plaintiff Wagenheim failed to provide any evidence sufficient to establish that defendant acted with the requisite intent to harm Wagenheim or that defendant acted with such a total and outrageous disregard for the interest of Wagenheim that its conduct was willful and wanton.

In addition, evidence was presented that defendant's decision to notify the mutual clients was made at the recommendation of its in-house counsel. Proof that the alleged misconduct of a defendant resulted from the advice of counsel

has been recognized as a mitigating factor when dealing with punitive damages. *Brownlee* v. *Pratt* (1946), 77 Ohio App. 533, 538 [33 O.O. 356]. When this factor is considered, along with plaintiff's failure to provide sufficient evidence of ill will or wanton behavior on the part of defendant, it is clear that the trial court should not have allowed the question of punitive damages to be submitted to the jury. Accordingly, defendant's second assignment of error is sustained.

Defendant asserts, in its third assignment of error, that the jury instructions given by the trial court in regard to the potential liability of defendant were erroneous and prejudicial. Defendant claims that not only were the instructions inaccurate and misleading, but they did not adequately define the duties owed by an accountant to his client and directed the jurors to decide for themselves what duties, if any, existed.

In considering whether specific portions of the trial court's instructions complained of were improper, the instructions as a whole must be reviewed. *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 210 [24 O.O.3d 316]. So long as the law is clearly and fairly expressed to the jury so that they are able to understand it as it applies to the facts in the case at hand, then no reversible error has been committed. Even if reversible error is found in the charge, it must also be shown that the substantial rights of the party complaining of the charge have been directly affected and to his prejudice before a reversal can be justified. *Ohio Farmers Ins. Co.* v. *Cochran* (1922), 104 Ohio St. 427, paragraph four of the syllabus. With this principle in mind, we find that defendant has failed to show that the instructions concerning its liability to CDS were prejudicially erroneous. The jurors were given the opportunity to decide whether defendant owed duties of care, skill, and faithfulness to CDS (which would in-clude the duty to protect the confidentiality owed CDS), which were breached. Obviously, the jury decided that duty did exist and that defendant breached that duty. Although the court's instructions in this regard were not a model of clarity, there were no specific objections that would have clarified the instructions as to the liability of defendant to CDS. Hence, defendant's third assignment of error is overruled so far as the liability of defendant to CDS is concerned.

While reversible error may not be found in the instructions as they relate to defendant's liability toward CDS, the instructions concerning defendant's liability to Wagenheim must be separately examined. As previously discussed, an accountant is not liable for the injuries allegedly sustained by a third party as a result of his breach of duty of confidentiality owed to one of his clients. The trial court's instructions read, in pertinent part, as follows:

"There is a duty to perform contracts, if such exist, with care, skill, and faithfulness. A failure to observe this duty constitutes negligence.

"If you find that Alexander Grant owed a duty to Mr. Wagenheim or CDS to use care, skill, and faithfulness in the performance of its contract, and that by its actions, Alexander Grant breached its duty either to Wagenheim or CDS, then you must find Alexander Grant liable to Wagenheim or CDS for the damages it sustained.

"Now, what is negligence? Negligence is an act or omission in violation of a duty owed to a person sustaining damages as a result of such act or omission.

"It is a general legal duty to exercise ordinary care to avoid injuring another.

"Ordinary care is that amount of care which a reasonable, prudent person is accustomed to use under the same or similar circumstances.

"Although evidence of custom or professional practice does not automatically establish a standard of care, such custom or professional practice does have a bearing on the standard of care.

"If you find that Wagenheim and Alexander Grant were in an accountant/client relationship and that Alexander Grant had a duty to Wagenheim to use ordinary care not to damage him, that the duty was violated, and that the violation was the proximate cause of damage to Wagenheim, you must find Alexander Grant liable to Wagenheim for the damages so sustained."

The trial court's instructions erroneously state that defendant may be held liable to Wagenheim, both in contract and in tort, for its decision to advise its clients to cease any further business relationship with CDS. Not only do the instructions establish the basis for such liability, but the jurors were asked to decide if, indeed, any duty should be placed upon defendant in its capacity as an accounting firm to protect the interests of third parties such as Wagenheim. The instructions were prejudicial to the substantive rights of defendant in regard to its liability for the alleged injuries suffered by Wagenheim. Therefore, defendant's third assignment of error is sustained as to Wagenheim.

In its fifth assignment of error, defendant asserts that the damages awarded to CDS must be set aside. Defendant cites three reasons for its claim: first, that the award was premised upon an erroneous measure of damages; second, that the evidence presented by plaintiff CDS failed to prove that the damages allegedly suffered by CDS were caused by defendant; and third, that even if the measure of damages asserted by plaintiff CDS is correct, the award was not supported by the evidence.

After reviewing the record, we find that there is sufficient, credible and competent evidence to support the jury's finding that defendant's actions were the direct and proximate cause of the demise of CDS. As to the amount of recovery, however, we find, based upon the evidence presented, that the damages awarded could not have been established with the degree of certainty required by law.

The damages that result from an alleged wrong must be shown with reasonable certainty, and cannot be based upon mere speculation or conjecture, regardless of whether the action is in contract or tort. *Rhodes* v. *Baird* (1866), 16 Ohio St. 573, 580-581. When an established and ongoing business is wrongfully injured or destroyed, the correct rule for determining the recovery should be the difference between the value of the business before and after its injury or destruction. *Taylor* v. *B. Heller & Co.* (C.A.6, 1966), 364 F. 2d 608, 612. Here, plaintiff CDS failed to provide sufficient, competent or credible evidence establishing with any reasonable certainty the value of CDS either before defendant notified the mutual clients or afterwards when the corporation was forced into receivership. CDS presented evidence of the claims filed by CDS's creditors as proof of the amount of damages sustained. While these figures might have been helpful in determining the value of the corporation, they could not by themselves be the basis of a recovery. The creditors' claims represent debts which CDS was already responsible for, regardless of defendant's actions. Evidence was also presented of the sale of Wagenheim's seventy-five percent interest in CDS as proof of its value. However, the sale took place in 1976 and that sale cannot be accepted as credible and competent evidence of the business' value in February 1978. In addition, CDS offered evidence as to the amount of money received at the forced sale of the assets of the corporation and the debts that re-

mained due on each item to show the value of CDS after the disclosures were made. No competent or credible evidence, however, was given as to the market value of those assets at the time of the disclosure, upon which the jury could base a determination of the value of the corporation other than by speculation or conjecture. Therefore, because CDS failed to present any credible and competent evidence as to the damages it sustained, defendant's fifth assignment of error is sustained.

As to defendant's sixth assignment of error, in light of our decision to sustain defendant's first and fifth assignments of error, defendant's claim that the damages awarded to CDS and Wagenheim were duplicative and contrary to law because necessary parties were not joined is now moot. Defendant asserts that it did not learn until the trial that Wagenheim had assigned his interests in the lawsuit to certain third parties, including some creditors of CDS, and that, based upon those assignments, it moved for a mistrial because necessary parties had not been joined. As has been previously discussed, a cause of action exists only in regard to defendant's misuse of confidential information obtained through its accountant-client relationship with plaintiff CDS. Therefore, regardless of the fact that Wagenheim may have assigned some of his rights to the damages that he may have been awarded in his lawsuit to other parties not joined therein, his cause of action should have been dismissed. Accordingly, defendant's sixth assignment of error is overruled.

In its seventh assignment of error, defendant asserts that the trial court erred in admitting the alleged expert testimony of one of plaintiff Wagenheim's witnesses, Kelly Morgan. Defendant bases its claim on the grounds that the witness was not qualified to state an opinion as to the standard of conduct applicable to the accounting profession and

that, even if Morgan was qualified, the manner in which his opinion was rendered was improper.

All preliminary questions under Evid. R. 104(A) concerning the qualifications of a person to be a witness are to be determined by the court. Thus, the decision to allow a witness to testify as an expert rests in the discretion of the trial court, and, on appeal, that decision will not be overturned unless it is shown that such discretion was clearly abused. Here, while Morgan's qualifications were not perhaps outstanding, there was sufficient evidence of Morgan's education, training and past experience as a certified public accountant in the Columbus area to support the trial court's determination that he was qualified to testify as an expert.

As to the method in which his testimony was given, after reviewing the transcript, we find that the witness went beyond the permissible limits allowed by Evid. R. 702 and 704. The witness, Morgan, was erroneously allowed to testify as to the duty owed by defendant to both CDS and Wagenheim in regard to confidential information concerning CDS. Indeed, no such duty is owed to Wagenheim concerning such matters. Relevant portions of Morgan's testimony read as follows:

"Q. [By counsel for plaintiff Wagenheim] If you assume further that the man and the accounting firm in this hypothetical situation had an accountant/client relationship, what duties were owed by the accounting firm to the individual?

"MR. ADDISON [counsel for Alexander Grant]: Objection.

"THE COURT: Overruled.

"THE WITNESS: As I indicated earlier, there are basic duties. You have the objectives, competency and confidentiality.

"* * *

"Q. Now, would you tell us in your opinion what duties were owed by the accounting firm to that corporate client?

"MR. ADDISON: Objection.

"THE COURT: Oh, I heard an objection.

"MR. ADDISON: Yes.

"THE COURT: Overruled.

"THE WITNESS: The duties would be the same if there was—no—it wouldn't be distinguished whether it was an individual or a corporate entity."

Expert opinion testimony is allowed for the purpose of aiding and assisting the jury in understanding the evidence presented and in arriving at a correct determination of the litigated issues. *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77 [40 O.O.2d 87]. However, an expert's interpretation of the law should not be permitted, as that is within the sole province of the court. *State* v. *Walsh* (1979), 66 Ohio App. 2d 85, 100 [20 O.O.3d 178]. Morgan's testimony as to the existence and breach of a duty owed by an accountant to his client for the disclosure of confidential information, regardless of whether it involves that particular client or another, was an opinion relating to the law and was prejudicial to the rights of the defendant. Therefore, the trial court erred in allowing such testimony to be admitted. Accordingly, defendant's seventh assignment of error is sustained.

As to defendant's eighth assignment of error, after reviewing the transcript of the trial proceedings, we find that, while counsel for plaintiff CDS may at times have acted improperly, his actions were not prejudicial to defendant's case. The record reveals that counsel for both sides were guilty of asserting their personal opinions as to the justness of their clients' causes. Therefore, we cannot sustain the proposition that the remarks made by plaintiff's counsel in regard to his personal opinion had a prejudicial effect upon the rights of defendant and were proper grounds for granting a mistrial. Accordingly, defendant's eighth assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court with instructions to grant final judgment to defendant against Wagenheim and to grant a new trial to defendant for the claim of CDS to be limited to the determination of damages only, liability having been established without prejudicial error.

*Judgment affirmed in part,*
*reversed in part,*
*and remanded with instructions.*

WHITESIDE, P.J., and McCORMAC, J., concur.