OPINION
Appellant, Albert Farr, sets forth the following two assignments of error on appeal:
 "I. The Trial Court erred in Granting Defendant/Appellee Safe-Way Barricades, Inc.'s Motion for Summary Judgment since genuine issues of material fact existed demonstrating that Defendant/Appellee Safe-Way Barricades, Inc. had notice and/or knowledge, prior to the time of Plaintiff/Appellant Albert Farr's accident, that a hazardous condition existed on the Front Street entrance ramp and that Defendant/Appellee failed to take steps to remedy said hazardous condition.
 "II. The Trial Court erred in Granting Defendant/Appellee Gerken Paving, Inc.'s Motion for Summary Judgment since genuine issues of material fact exist demonstrating that Defendant/Appellee Gerken Paving, Inc., had notice and/or knowledge, prior to the time of Plaintiff/Appellant Albert Farr's accident, that a hazardous condition existed on the Front Street entrance ramp and that Defendant/Appellee failed to take steps to remedy said hazardous condition."
The undisputed facts which are relevant to the issues raised on appeal are as follows. On July 23, 1994, appellant was injured when his 1977 Harley Davidson motorcycle struck a four-inch elevated section of pavement while appellant was attempting to enter I-280 at the Front Street entrance ramp in Toledo, Ohio. As a result of the impact, appellant lost control of the motorcycle and struck a concrete barrier in the center of the highway at thirty-five miles per hour. Appellant was thrown from his motorcycle and was injured.
The elevated segment of the highway was created when employees of appellee, Gerken Paving, Inc. ("Gerken"), stripped the asphalt off of the right-hand traffic lane so that repairs could be made to the underlying concrete roadbed. To assist incoming traffic in negotiating the four-inch transition in height from the entrance ramp into the left-hand lane, Gerken had installed an asphalt wedge along a portion of the entrance ramp. While repairs were being made, all traffic was diverted up the entrance ramp, across the stripped right lane, over the wedge and onto the left-hand lane by a series of orange barrels. The barrels were leased to Gerken by appellee, Safe-Way Barricades, Inc. ("Safe-Way").
Gerken performed the road repairs according to specifications provided by the Ohio Department of Transportation ("ODOT"). Gerken's employees were responsible for monitoring the placement and condition of the orange barrels during working hours, and Safe-Way was responsible to monitor the barrels on weekends and at other times when Gerken was not working on the project area. Daily inspections of the barrels were performed, and the results of all inspections were recorded in a log which was kept in Gerken's field office at the job site.
On July 23, 1996, the complaint herein was filed against Gerken and Safe-Way. The complaint alleged that appellant's injuries were caused by appellees' negligence, specifically, appellees' negligent "placement of the barricades which directed traffic on Interstate 280, their failure to make sure that the portion of said highway was safe for travel, and their allowing said hazardous condition (uneven pavement) to exist." On August 8, 1996 and August 12, 1996, respectively, Gerken and Safe-Way filed answers to the complaint.
On January 22, 1997, Safe-Way filed a motion for summary judgment and memorandum in support thereof, in which it asserted that "there is an absence of evidence demonstrating that Safe-Way knew or had any knowledge of a problem with the barricades before the accident." Alternatively, Safe-Way asserted that appellant assumed the risk of injury because he did not look to make sure he was using the asphalt wedge to accelerate onto I-280. Along with its motion, Safe-Way filed transcripts of the deposition testimony of appellant and Gerken employee Dean Breese.
On February 18, 1997, Gerken filed a motion for summary judgment and memorandum in support thereof, in which it asserted that appellant's claims against Gerken are "meritless" because Gerken reasonably followed ODOT procedures in repairing the roadway, a drop of four inches in the pavement is not a "hazardous condition," and Gerken had no knowledge of the "alleged hazard such that its failure to remove or warn of the hazardous condition equates to a failure to exercise ordinary care." Gerken also relied on the deposition testimony of appellant and Breese in support of its motion.
Appellant testified in his deposition that at the time of the accident he was a member of the Iron Coffins motorcycle club, and that he and four other members of the club, Robert Hopkins, Rick Litzenberger, Jim Thompson, and Chuck Frederick, were riding their motorcycles to a fund raiser when the accident occurred. Appellant further testified that as he approached northbound I-280 on the Front Street entrance ramp, he noticed orange construction barrels and realized that the right lane of the roadway had been "stripped down," with the top layer of asphalt removed. Appellant stated that he knew the left-hand lane was at a higher elevation than the right-hand lane, and he saw that a "transitional area" had been provided between the two elevations; however, he did not use the transitional wedge because it ended "quite a bit" before he attempted to enter the highway. As to the cause of the accident, appellant stated:
 "We came around and I seen [sic] the barrel, and * * * I looked over my shoulder to see the traffic on 280 because we were merging. All of a sudden my front wheel jumped up and I slid out and my motorcycle went across to the barricade in the center."
After reviewing a photograph of the accident scene which was taken on July 24, 1994, appellant testified, referring to the photograph:
 "what you don't see right here is the first barrel that you have to get in between here and where the barrels are up here, and this traffic is moving down this road and you have to accelerate out, and you're going to pull out in front of somebody doing 10 miles an hour and they are going to blast you.
 "If there was no traffic on the road, we could have used the ramp, but it was pretty crowded so we had to go get up to highway speed, and I didn't notice the ramp ended because I was busy watching traffic."
Appellant stated that he did not consider waiting for traffic to clear because there was too much traffic, and going slower could have been hazardous; however, he could have merged into traffic without watching where he was going if the wedge had continued all the way to the end of the entrance ramp.
Breese, an engineer who worked as Gerken's project manager, testified in his deposition that the asphalt wedge was put in "to aid cars to climb that differential between the middle surface and the paved surface" of the highway, and that the height difference could be dangerous. As to the photograph, Breese testified that it showed a "bad barrel formation," and that it looked like the barrels in the photo had been moved to allow more access to the roadway. Breese further stated that the barrels should have been placed so that no areas of the stripped highway were exposed beyond the end of the wedge.
Breese testified that it was "everybody's job" to monitor placement of the orange barrels, which were often moved out of place by traffic. He further stated that Gerken and Safe-Way employees kept a daily log of the barrel inspections; however, he was not sure if the out-of-place barrels on the photo would have been reported in the log. Breese stated that he personally inspected the barrels on Friday July 22, 1994, at the end of the work day, and the barrels were not misplaced. Breese stated that ODOT plans do not specify that wedges are to be used; however, ODOT has the power to direct Safe-Way and Gerken in the placement of the orange barrels, if needed, once a wedge is constructed. Finally, Breese testified that neither Gerken or Safe-Way had any knowledge of any defects or problems with the placement of the barrels at the Front Street entrance ramp prior to appellant's accident.
On April 17, 1997, appellant filed separate briefs in opposition to Gerken's and Safe-Way's motions for summary judgment. In support thereof, in addition to the pleadings and depositions already filed in the case, appellant relied on the deposition testimony of Safe-Way employee, Ryan Odendahl, and the affidavit of appellant's friend, Robert Hopkins.
Odendahl testified in his deposition that it was his job to check all highway construction zones on weekend mornings, and to fill out a log after each inspection. Odendahl further testified that he did not specifically recall inspecting the Front Street ramp area on July 23 or July 24, 1994; however, if he had seen a barrel out of line on those dates he would have moved it back into place. Odendahl stated that the orange barrels are to be placed up to the edge of the wedge, so that vehicles cannot be driven on an area where there is no wedge. He further stated that it was his job to get traffic up over the wedge, and to keep traffic from hitting uneven pavement or going into the stripped zone of the highway. As to the photograph, Odendahl stated that the barrels in the picture appeared to be out of alignment.
Hopkins stated in his affidavit that he was driving his motorcycle with Farr on July 23, 1994, and that he saw "Farr's motorcycle slide out and * * * hit the wall." Hopkins also stated that he returned to the scene of the accident on July 24, 1994, to take photographs and examine the area. He stated that the placement of the barrels on Sunday, July 24, 1994, at 10 a.m., when the photograph was taken, was the same as it had been at 6 p.m. on July 23, 1994, when appellant had the accident.
On May 15, 1997 and May 20, 1997, respectively, Safe-Way and Gerken filed replies in support of their motions for summary judgment. On June 23, 1997, the trial court filed a judgment entry in which it found that the record contained no evidence that Safe-Way or Gerken had notice or knowledge that the orange barrels were misaligned prior to appellant's accident. Accordingly, the trial court granted appellees' motions for summary judgment and dismissed appellant's complaint. On July 24, 1997, appellant filed a timely notice of appeal.
We note at the outset that, in reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Appellant asserts in his first assignment of error that the trial court erred by granting Safe-Way's motion for summary judgment because a genuine issue of fact remains as to whether Safe-Way knew or should have known of the existence of a hazardous condition, i.e., that the orange barrels were out of alignment at the time of appellant's accident.
In order to establish actionable negligence, "one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom.' * * *" Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, citing Menifee v. Ohio Welding Products, Inc.
(1984), 15 Ohio St.3d 75, 77. The threshold inquiry, therefore, is whether Safe-Way owed a duty to appellant. In cases where, as here, a party agrees to perform services pursuant to a contract, he has a duty to use ordinary and reasonable care in the execution of his contractual duties. See Berger v. American Bldg.Inspection, Inc. (May 2, 1997), Lake App. No. 96-L-114, unreported, citing Wagenheim v. Alexander Grant Co.
(1983), 19 Ohio App.3d 7. A plaintiff may establish a defendant's failure to exercise ordinary care by demonstrating that the defendant knew or should have known of an alleged hazard and failed to remove it or warn the plaintiff of its existence.Presley v. Norwood (1973), 36 Ohio St.2d 29, 31.
It is undisputed in this case that Safe-Way contracted to inspect the placement and condition of orange barrels on weekends, and to replace or reposition barrels that were broken or out of position, so that motorists would be guided onto the asphalt wedge. It is further undisputed that the barrels pictured in the photograph taken by Hopkins fifteen hours after appellant's accident were out of alignment. As set forth above, Hopkins stated in his affidavit that the barrels were in the same position in the photograph as they were on the night of the accident, and Odendahl could not testify specifically as to the condition of the barrels on either July 23 or July 24, 1994.
This court has reviewed the entire record of proceedings which was before the trial and, upon consideration thereof and the law, finds that genuine issues of fact exist as to whether Safe-Way knew or should have known that the orange barrels were out of alignment on July 23, 1994, and thereby breached its duty to appellant to use ordinary and reasonable care in carrying out its contractual duties. Accordingly, appellant's first assignment of error is well-taken.
Appellant asserts in his second assignment of error that the trial court erred by granting Gerken's summary judgment motion, because a genuine issue of fact exists as to whether Gerken failed to use due care "to make sure that the construction barrels met the edge of the `wedge.'"
Generally, once a contractor has agreed to undertake performance of a contract with ODOT, the contractor cannot be held liable for negligence unless he does not follow the plans and specifications or unless the plans are so obviously defective that no reasonable person would follow them. Jackson v. City ofFranklin (1988), 51 Ohio App.3d 51, 53. In addition, the duty to use ordinary care as set forth above in regard to Safe-Way, also applies to Gerken.
In this case, the record contains no evidence that Gerken failed to follow ODOT's plans and specifications, or that such plans were so unreasonable that Gerken should not have followed them. As for the placement of the asphalt wedge, appellant argues only that the barrels were misaligned, and not that the wedge was misplaced.
As to Gerken's duty to use ordinary care, it is undisputed that Gerken conducted inspections of the orange barrels during its working hours, and that Safe-Way contracted to perform the inspections during non-working hours and on weekends. Breese stated in his deposition that Gerken employees could be contacted twenty-four hours a day, seven days a week if problems developed with the barrels; however, no notice was given to Gerken that the barrels were misaligned on July 23, or July 24, 1994. Breese also stated that he personally inspected the barrels before leaving the construction site on Friday, July 22, 1994, and no barrels were out of alignment.
Upon consideration of the foregoing, we find that Gerken had no notice of the alleged hazardous condition, i.e., that the orange barrels were out of alignment on July 23, 1994. There remains no genuine issue of material fact and, when construing the evidence that was before the trial court most strongly in favor of Gerken, reasonable minds can only conclude that Gerken is entitled to summary judgment as a matter of law. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds further that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded to the trial court for proceedings consistent with this opinion. Court costs of these proceedings are assessed equally to appellant and appellee Safe-Way.
 JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 James R. Sherck, J.
CONCUR.