THOMPSON, Appellee,

v.

GERMANTOWN CEMETERY et al., Appellants.

[Cite as *Thompson v. Germantown Cemetery,* 188 Ohio App.3d 132, 2010-Ohio-1920.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23510.

Decided April 30, 2010.

Leppla Associates, Gary J. Leppla, and Chad E. Burton, for appellee.

Dinkler Pregon L.L.C., Lynnette Ballato Dinkler, and Jamey T. Pregon, for appellant.

BROGAN, Judge.

{¶ 1} The village of Germantown and German Township Board of Trustees (together, "Germantown"), defendant-appellants, have appealed a trial court's order denying them summary judgment based on their affirmative defense of political-subdivision immunity. Germantown contends that it has immunity from the negligence claim of Wilma Thompson, plaintiff-appellee. Germantown contends also that while it breached a contract with her, Thompson cannot recover for emotional distress caused by the breach. Germantown contends lastly that the trial court may not award Thompson punitive damages. We will affirm in part, reverse in part, and remand.

I

{¶ 2} Germantown admits that the Germantown Cemetery mistakenly sold two of Thompson's burial plots and allowed them to be used.[1] In June 1984, when

---

1. The Germantown Cemetery (formerly known as Germantown Union Cemetery Board of Trustees) is also a defendant. But Germantown, in its motion for summary judgment, argued

her first husband died, Thompson purchased two burial plots in the Germantown Cemetery, plots A and B, in lot 314. Thompson buried her husband in 314A; she planned to be buried in 314B. The following month, Thompson purchased two more burial plots adjoining the first two, plots A and B in lot 312. A number of years later, Thompson remarried, and she eventually decided to use lot 312 for her son and second husband. Tragically, in 2006, Thompson's husband was killed in an auto accident. When burial arrangements were being made, it was discovered that in 1987, the cemetery had inadvertently sold the two plots in lot 312 to Charles and Viola Lake, who, in 1988 and 1996 respectively, were buried in them.

{¶ 3} The cemetery admitted its mistake and worked with Thompson to find an alternative burial plot. Later, Thompson demanded that the cemetery disinter the Lakes and move her second husband. The cemetery contacted Eugene Lake, the son of Charles and Viola, and asked for his consent to move his parents. Lake refused. The cemetery then offered Thompson four adjoining plots in another area and offered to move her first husband there. Thompson refused, insisting the Lakes be moved.[2]

{¶ 4} Thompson filed a complaint for declaratory judgment, later filing an amended complaint for the same. In the first claim, Thompson alleges that Germantown acted negligently by allowing the burial of the Lakes in plots owned by her. Thompson requests a declaration of the rights and responsibilities of the parties as well as an order for damages. In the second claim, Thompson alleges that Germantown breached the parties' purchase contract for the burial plots, and she requests damages for her consequent emotional distress. In the third claim, Thompson asks the court to determine the Germantown Village Council's and the German Township Board of Trustees' joint and severable liability for her damages. In her fourth claim, Thompson asks the court to declare R.C. 2744.05(C) unconstitutional. Germantown filed an answer in which it admits that Thompson purchased four adjoining burial plots, admits that it allowed the Lakes to be buried in two plots, and admits that it had no authority to do so. Germantown also says that it admitted its mistake in a 2006 letter it sent Thompson. Germantown pleaded a number of affirmative defenses, including political-subdivision immunity.

---

that the cemetery is a nonentity, not subject to suit. Thompson did not disagree. The trial court concluded that the cemetery was a nonentity, so it granted summary judgment on the claims against it. Thompson does not appeal that portion of the court's decision.

2. Eugene Lake has since reconsidered his initial refusal. He has given his consent to move his parents but only on the condition that Germantown not pay damages in this case.

{¶ 5} Later, Germantown filed a motion for partial summary judgment based on its immunity defense. Germantown argued first that it was immune from the negligence claim. It argued second that Thompson cannot recover emotional-distress damages for its breach of contract. And Germantown argued, third, that under the immunity statute, Thompson's request for punitive damages and attorney fees cannot be granted. The trial court rejected all Germantown's arguments. We have jurisdiction over Germantown's appeal because an order that denies the benefit of alleged political-subdivision immunity is final and appealable. See *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878; R.C. 2744.02(C).

## II

{¶ 6} Germantown assigns three errors to the trial court's order.

**First assignment of error**

{¶ 7} "The trial court erred in not granting immunity to appellants for the alleged negligence in recordkeeping in the operation of the Germantown Cemetery."

{¶ 8} Germantown contends that it is immune from Thompson's negligence claim under the Political Subdivision and Tort Liability Act, codified in R.C. Chapter 2744. A court's immunity analysis is three-tiered. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 557, 733 N.E.2d 1141. In the first tier, the court determines whether the defendant is a political subdivision entitled to qualified immunity under R.C. 2744.02(A)(1). In the second tier, the court determines whether one of the immunity exceptions in R.C. 2744.02(B) applies. And in the third tier, the court determines whether the political subdivision can re-establish its immunity using one of the defenses in R.C. 2744.03. Because Thompson does not dispute that Germantown is a "political subdivision" entitled to qualified immunity, we begin with the second tier of the analysis.

{¶ 9} Thompson contends that the exception in division (B)(2) of section 2744.02 applies to make Germantown responsible for its negligence. This exception renders political subdivisions "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). Although in its brief Germantown argues that Thompson cannot establish this exception, during oral arguments, it relented. Germantown was wise to do so because the negligence that Thompson alleges plainly concerns the operation of

the Germantown Cemetery, and the operation of a public cemetery is a proprietary function. See R.C. 2744.01(G)(2)(b).[3]

{¶ 10} We agree with Germantown that Thompson's negligence claim as pleaded is rather imprecise. The claim does not clearly state what duty of care Germantown Cemetery allegedly owed Thompson but breached. It is, of course, fundamental that before there can be negligence, there must be a duty. A duty can arise either by operation of law or by contract. *Hubbell v. Xenia,* 175 Ohio App.3d 99, 2008-Ohio-490, 885 N.E.2d 290, at ¶ 25, citing *Northwest Airlines, Inc. v. Glenn L. Martin Co.* (C.A.6, 1955), 224 F.2d 120. Construing Thompson's amended complaint most strongly in her favor, as we must, the only duty we see implicated that Germantown owed is one implied by law in the parties' purchase contract, which duty was allegedly breached when Germantown breached the contract. "[T]here [arises] a duty recognized in every contract that each party will fulfill his obligations with care, skill, and faithfulness." *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 14, 19 OBR 71, 482 N.E.2d 955; see also *Hubbell* at ¶ 25. While a breach of contract is ordinarily not a tort, a party that fails to exercise due care when performing his obligations under a contract gives rise to a cause of action in tort. See *Hubbell* at ¶ 26, citing *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10. The negligent failure to fulfill this legal duty, therefore, may be both a tort and a breach of contract. See *Fouty v. Ohio Dept. of Youth Servs.,* 167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909, at ¶ 65, citing *Gabriel v. Allstate Ins. Co.* (Dec. 5, 1979), Clermont App. No. CA 813, 1979 WL 208829, citing *Hunsicker v. Buckeye Union Cas. Co.* (1953), 95 Ohio App. 241, 53 O.O. 185, 118 N.E.2d 922. And "[t]he mere fact that a breach of contract is alleged does not preclude a cause of action for negligence based on a duty assumed under the contract." *Berger v. Am. Bldg. Inspection, Inc.* (May 2, 1997), Lake App. No. 96–L–114, 1997 WL 269318, citing *Soltesz v. DiCamillo* (Feb. 5, 1996), Cuyahoga App. No. 69048, 1996 WL 65871. We read Thompson's negligence claim, then, as alleging that Germantown negligently performed its obligations to her under the purchase contract.

{¶ 11} The primary issue in this case is whether Germantown can re-establish its immunity using the defense in R.C. 2744.03(A)(5). Under this

---

**3.** One of the statutory meanings of "proprietary function" is "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery." The Germantown Cemetery is not a "township cemetery." Germantown says that the cemetery was jointly created and is jointly operated by the German Township Board of Trustees and the Village of Germantown. In other words, it is a "union cemetery." See R.C. 759.27. Conversely, a "township cemetery" is owned and operated solely by a township. See R.C. 517.01.

defense, "[t]he political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5). In support of its argument, Germantown points to two facts: one, when Thompson purchased the burial plots in 1984, the cemetery kept only paper records, and, two, the financial resources of the cemetery back then were severely limited. Germantown infers from the second fact, reasonably, that the cemetery could not purchase a better record-keeping system—specifically, it could not purchase a computerized system. Based on this evidence, Germantown contends that its decision not to acquire a computer or allocate scare financial resources to purchase one is sufficient to establish the defense.

{¶ 12} "[I]n order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability," we have said, "[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved is required." *Hubbell*, 175 Ohio App.3d 99, 2008-Ohio-490, 885 N.E.2d 290, at ¶ 18, quoting *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60, 738 N.E.2d 37. "[R]outine decisions requiring little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance, are not covered by the defense provided by R.C. 2744.03(A)(5)." Id. at ¶ 22. The negligent acts alleged by Thompson concern generally the cemetery's recordkeeping of burial-plot sales and owners. There is no evidence of a "positive exercise of judgment" showing that the Germantown Cemetery considered implementing a computerized record keeping system but because of a tight budget decided not to do so. It would not be reasonable to infer that merely because it did not have a computer in 1984, the cemetery wanted one. (It may also be an anachronism because 1984 was the year the Apple Macintosh was introduced, which was arguably the first widely popular desktop computer.) And even if there were such an exercise of discretion, it did not cause Thompson's injuries. Germantown admits that it made a mistake. Her injuries were not caused by the noncomputerized record-keeping system; Thompson's injuries were caused by the cemetery's mistakenly selling her burial plots to the Lakes (or, ultimately, allowing the Lakes to be buried in her plots). Her injuries, then, were likely caused by Germantown's "inadvertence, inattention, or unobservance."

{¶ 13} Briefly, we note the effect that the purchase contract has in this case. Thompson's negligence claim is based on the legal duty to fulfill obligations assumed under the contract with reasonable care. The terms of the contract, then, necessarily define the nature and scope of the cemetery's duty here. See

*Berger,* Lake App. No. 96–L–114, 1997 WL 269318, citing *Tyes v. Otis Elevator* (Sept. 1, 1983), Cuyahoga App. No. 45880, 1983 WL 4683. By contrast, if, for example, a third party sneaked into the cemetery under cover of darkness and buried someone in one of Thompson's plots, whether the cemetery were negligent would depend not on contractual terms but on whether the cemetery breached a generally owed legal duty to owners of unused burial plots. Further, with respect to the discretion defense in R.C. 2744.03(A)(5), the contract necessarily circumscribes the cemetery's discretion in this case. The cemetery does not have the full range of discretion it would have without the contract. What would qualify as a discretion defense in the example above may exceed the limits of the cemetery's discretion here. As there is no evidence in the record of the terms of the purchase contract, it is not possible to determine the actual range of the cemetery's discretion.

{¶ 14} The key point is that reasonable minds need not conclude that Germantown exercised the type of discretion in R.C. 2744.03(A)(5). Summary judgment on Germantown's immunity defense, therefore, is improper.

{¶ 15} The first assignment of error is overruled.

**Second assignment of error**

{¶ 16} "The trial court erred in not granting immunity to appellants for a claim for emotional damages under a breach of contract claim premised upon *Kishmarton v. William Bailey Construction,* 93 Ohio St.3d 226, 754 N.E.2d 785 (2001)."

{¶ 17} Germantown concedes that it is not immune from contractual liability. See R.C. 2744.09(A) (the Political Subdivision and Tort Liability Act does not apply to "[c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability"). But it contends that the Ohio Supreme Court's holding in *Kishmarton v. William Bailey Constr.* (2001), 93 Ohio St.3d 226, 754 N.E.2d 785, which allowed, for the first time, an award of damages for emotional distress caused by a breach of contract, should not be extended to the purchase contract here.

{¶ 18} Thompson seeks to recover damages for emotional injuries that resulted from Germantown's breach of the purchase contract. Plainly, Germantown may be held responsible for damages that were caused by its breach. Whether this includes emotional injuries under *Kishmarton* is not an immunity issue; therefore, the issue is not properly before us. See R.C. 2744.02(C).

{¶ 19} The second assignment of error is overruled.

**Third assignment of error**

{¶ 20} "Whether Germantown is entitled to summary judgment on any punitive damages claim."

{¶ 21} In its motion, Germantown sought summary judgment on Thompson's request for attorney fees and punitive damages, arguing that neither was allowed by R.C. Chapter 2744. The trial court evidently misread the motion as seeking summary judgment on the constitutionality of R.C. 2744.05(C) because in its decision overruling Germantown's motion, the court concluded that because liability had not been established, the constitutional issue was premature. Germantown here contends only that it is entitled to summary judgment on Thompson's claim for punitive damages.

{¶ 22} R.C. 2744.05(A) ("Punitive or exemplary damages shall not be awarded") plainly prohibits awarding punitive damages in a tort action against a political subdivision. As a matter of law, then, Thompson may not be awarded punitive damages.

{¶ 23} The third assignment of error is sustained.

### III

{¶ 24} We have overruled the first and second assignments of error and sustained the third assignment of error. Therefore, the trial court's judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FAIN and GRADY, JJ., concur.