OPINION
This is an appeal from two judgment entries of the Fulton County Court, Eastern Division, in which the court: (1) accepted jury verdicts finding appellant, Jose Vasquez, guilty of six counts of cruelty to animals,[1] guilty of one count of filing an incomplete, false or fraudulent income tax return with the village of Swanton,[2] and guilty of one count of petty theft; and (2) sentenced appellant for those crimes. Appellant asks this court to consider seven assignments of error.
The assignments of error are:
 "I. FINDING APPELLANT GUILTY OF CRUELTY TO ANIMALS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "II. APPELLANT BARKER [SIC] WAS NOT GUILTY OF THEFT IN CASE NO.: CRB 00046-2.
 "III. THE INSTRUCTIONS TO THE JURY WERE VAGUE AND CONFUSING, AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS.
 "IV. APPELLANT VASQUEZ WAS NOT GUILTY OF THE CITY INCOME TAX CHARGE.
"V. APPELLANT CANNOT BE ORDERED TO SERVE TIME IN JAIL.
 "VI. THE SENTENCE OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION.
 "VII. THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW, PURSUANT TO THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA AND STATE OF OHIO."
The record shows that appellant and his companion, Mary Barker, bred and sold dogs from their home in Swanton, Ohio. They kept a sign in their front yard that read "Joe and Mary's Petland". In response to several complaints from persons who were on the premises and who purchased dogs from appellant, a patrolman from the village of Swanton Police department applied for and received a search warrant to search appellant's home. He took the warrant to appellant's home on December 11, 1996 at 11:00 a.m. He was accompanied by an agent from the humane society for Fulton County, the Chief Dog Warden for Lucas County, the Fulton County Dog Warden and a Deputy Dog Warden for Lucas County. The agent for the humane society for Fulton County determined that the dogs had to be seized for medical treatment because the conditions under which they were being kept constituted cruelty or neglect.
Appellant and his companion were disturbed from their sleep when the officers entered their home. The officers seized all of the dogs that were inside the home and all of the dogs that were kept in the back yard of appellant's home.
The dogs were assessed by a veterinarian. Many were underweight, had worms and were badly matted. Many were covered in their own urine and fecal matter from their kennels.
Numerous charges were filed against appellant. He entered not guilty pleas to each of the charges and demanded a jury trial. As we previously noted, the jury did find appellant guilty on some of the charges, and the trial court accepted the jury verdicts and sentenced appellant for the crimes for which he was convicted. We now turn to the first assignment of error.
Appellant argues, in support of his first assignment of error, that his convictions for the crime of cruelty to animals are against the manifest weight of the evidence. The Supreme Court of Ohio has said:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Further, the Supreme Court of Ohio has said the jury at trial, not an appellate court, has the function of deciding which witnesses are credible. State v. Kehn (1977), 50 Ohio St.2d 11,14. Keeping these standards in mind, we now consider the manifest weight arguments presented by appellant.
Appellant contends that he should not have been convicted for cruelty to animals in regard to a German shepherd which the officers testified was chained to a tree in the back yard. The dog was in mud three inches deep, had no access to food or water and could only get his head into the "igloo" that was provided for his shelter because his chain was wrapped around the tree several times, making the chain too short for him to enter his shelter. Even if he could have entered the shelter, the floor in the shelter was wet. The officer who seized the dog said the shelter would have sunk into the mud from the dog's weight if the dog had entered the shelter to lay down.
Appellant states that appellee did not show that the circumstances the officers described with regard to the German shepherd were ongoing. He says that he should not be held responsible for an isolated incident where the dog wrapped its chain around the tree, making it impossible for him to reach shelter. He states that the testimony from one of appellee's witnesses showed that the witness saw the German shepherd "on a different date" and she "did not see anything unusual and that the dog appeared happy (TR. 276)."
We have reviewed the entire trial transcript. We find appellee presented sufficient evidence for the jury to decide that the circumstances described by the officers who seized the German shepherd from the back yard were not the result of an isolated incident. We reviewed the testimony appellant cited in his brief and find nothing in the witness's testimony to support the statement that the dog appeared "happy".
The witness stated the dog was tied to a tree when she saw him. She was shown pictures taken on the date the dog was seized. She said the area was muddy when she saw the dog, but not as muddy as it appeared in the pictures. She also said she did not see any type of dog house when she saw the dog, although one might have been there that she just did not notice.
The testimony in the transcript, taken as a whole, shows that the dog was always seen chained to the tree, in varying degrees of mud, without access to food and water and without shelter. We cannot conclude, after carefully reviewing the record, that the jury lost its way when it decided that the more credible evidence showed that appellant was responsible for animal cruelty with regard to the German shepherd that was seized from the back yard. We therefore do not find that appellant's conviction on this charge was against the manifest weight of the evidence.
Appellant also argues that his convictions for four more charges of animal cruelty were against the manifest weight of the evidence. The record shows that these charges were brought after the officers seized three mother dogs and their puppies from three kennels that were stacked on top of one another in a closet with the doors closed. There was no bedding in any of the kennels and the dogs were urine soaked. There was fecal matter in the kennels. All of the dogs had internal and external parasites and required medical treatment for worms.
Appellant argues that testimony at trial showed he cared for the dogs in the backyard, outside the home. Mary Barker cared for the dogs inside the home. He states that since Mary Barker was the caretaker for the dogs in question, he cannot be convicted for cruelty to animals in regard to those dogs.
Appellant also argues that even if he can be held responsible for the conditions the dogs inside the house were kept in, the evidence does not show that the conditions in this case amounted to cruelty. He says that even though the closet doors were closed, the dogs had sufficient fresh air because the doors were louvered. He says the dogs were in the kennels when the officers arrived because he was still in bed, but appellee failed to prove he did not ever let the dogs out of the kennels for exercise.
We are not persuaded by appellant's first argument, that he cannot be held responsible for the conditions under which the dogs inside the house were kept. The record contains proof that appellant and Mary Barker jointly owned and operated the business of breeding and selling dogs. Several witnesses testified that they saw appellant mopping up urine from the dogs inside the house when they went to the house as customers seeking to buy a puppy. As co-owner of the business and co-resident of the house, appellant had an obligation to ensure that none of the dogs owned by the business were subjected to cruelty.
The record shows that several witnesses testified that they saw the dogs in the kennels in the closet. Each witness was at appellant's home on separate occasions and at different times of the day, yet each recounted a similar story of hearing the dogs in the closet and of seeing the three kennels stacked in the closet with the dogs in them when the closet doors were opened.
The agent for the Fulton County Humane Society testified that he responded to complaints from persons who had seen the dogs in the closet at appellant's home. He went to the home and heard dogs barking in the closet. He explained to Mary Barker that the dogs should not be kept in the closet, because they needed fresh air and exercise. She agreed to remove the dogs from the closet.
He received more complaints, and set up an appointment to again look around the home. When he arrived, Mary Barker opened the closet to show him that no dogs were in the closet. She would not agree to let him see any other part of the home.
Later, when the search warrant was executed, the agent was present. He found dogs in the closet in three kennels that were stacked on top of one another.
The Chief Dog Warden for Lucas County testified that while the louvered doors in the closet permitted the dogs to get enough air to breath, the dogs still did not have enough fresh air. He testified that the quality of the air the dogs were breathing would be poor, and would lead to illnesses because the air would contain contamination from the urine and fecal matter in the kennels. He said the quality of the air would progressively decrease the longer the closet doors were kept closed. He said disease could easily travel from one dog to another because the dogs would continuously be breathing in air the other dogs had just exhaled. He stated that even if the closet doors were opened, the dogs would still not get fresh air, because the air in the entire house was saturated with the smell from urine and fecal matter of other dogs.
Based upon the testimony in the record, we cannot conclude that the jury lost its way when it decided that the more credible evidence showed that appellant was responsible for animal cruelty with regard to the dogs who were kept in kennels in the closet. We therefore do not find his convictions for cruelty to animals based upon these charges were against the manifest weight of the evidence. Appellant's first assignment of error is not well-taken.
Appellant argues, in support of his second assignment of error, that he did not commit the crime of theft. The record shows that appellant was charged with theft in connection with the sale of a six-week-old German shepherd puppy. The charges were filed pursuant to R.C. 2913.02(A)(3). R.C. 2913.02(A)(3) provides:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
"* * *
"(3) By deception * * *."
Deception is defined in R.C. 2913.01(A) as follows:
 "(A) `Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
A husband and wife who purchased a six-week old German shepherd puppy from appellant's business on November 24, 1996 testified at trial. The wife testified she read an ad placed in a newspaper for German shepherd puppies for sale. In response to the ad, she called the listed number and talked with Mary Barker. She said she wanted "a dog that came from a good background that I could eventually show and I was told that the dogs came from a very good background, that the dog or that the father had been previously shown and had all types of dog awards." Mary Barker also told the wife that the dogs were registered with the American Kennel Club ("AKC").
The husband and wife went to appellant's home to look at the puppies. Mary Barker first showed them a six-month-old male German shepherd puppy. When they expressed uncertainty because of his size, Mary Barker showed them a litter of six-week-old puppies. The husband and wife eventually decided to buy one of the six-week-old puppies. They paid Mary Barker three hundred dollars for the dog.
Mary Barker gave them AKC papers signed by appellant when they bought the puppy. They took him home, and soon discovered that their infant daughter was allergic to the dog. When the wife called to arrange the return of the dog, Mary Barker refused to return the purchase money for the dog. Instead, she said that customers had five days from the date of purchase to take the puppy to a veterinarian. If a veterinarian said the puppy was not healthy, she would exchange it for another puppy.
The wife did take the puppy to a veterinarian. The puppy had tapeworms and was undernourished.
Upon closer examination of the AKC papers, the husband and wife discovered the papers were not for the puppy they purchased. The date of birth listed on the documents for the dog showed that the dog was six months old, not six weeks old. The wife testified she would not have purchased the puppy if she had known there was a problem with the AKC registration of the puppy.
The husband testified that he too called and spoke to Mary Barker after he learned about the discrepancy regarding the birth date of the puppy and the AKC papers. He told Mary Barker he wanted his money back since the papers were wrong, and she told him she had already spent the money.
Other testimony at trial showed that the dogs listed as parents on the AKC papers for the German shepherd puppy were not really the puppy's parents. The mother dog listed on the AKC papers had puppies six months before the six-week old puppy was born. A veterinarian testified it was biologically impossible for that same mother to have a second litter of puppies within six months after she had the first litter of puppies.
In addition, the former owner of the mother dog testified that she owned the dog when it became pregnant, and she gave the dog to Mary Barker in trade when the dog was still pregnant. Mary Barker later told her the mother dog had puppies, but they all died. The former owner of the mother dog testified that she knew the identity of the father dog, and it was not the same dog named on the AKC papers appellant signed that were given to the customers who purchased the six-week old puppy.
Based upon the testimony in the record, we find that appellee presented evidence to prove each essential element of the crime of theft by deception in regard to the transaction relating to the German shepherd puppy. Appellant's second assignment of error is not well-taken.
In support of his third assignment of error, appellant argues that the jury instructions in his case were vague and confusing. He says that he and his co-defendant, Mary Barker, were tried at the same time. He says the trial court did not clearly tell the jury that he could not be convicted of crimes that Mary Barker committed. He also asserts that the trial court mixed together the instructions for two theft charges. The second theft charge related to a sale of a puppy that was alleged to be a cockapoo.
Appellant's trial counsel made no objection at trial that the jury instructions were vague and confusing or that the instructions on the theft charges were mixed together. Therefore, unless appellant can show the existence of plain error, any error which occurred in the instructions was waived for appeal. See,e.g., State v. Adams (1980), 62 Ohio St.2d 151, 153,404 N.E.2d 144; State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph one of the syllabus. A plain error is an:
 "[O]bvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221 (quoting United States v. Atkinson
(1936), 297 U.S. 157, 160, 80 L. Ed. 555, 56 S.Ct. 391.
Finally, jury instructions must be viewed as a whole to determine whether they are prejudicial. Wagenheim v. Alexander Grant Co.
(1983), 19 Ohio App.3d 7, 16, 482 N.E.2d 955.
We have carefully reviewed the jury instructions in this case and after considering the jury instructions as a whole, we cannot find that they were prejudicial to appellant. We do not find that the instructions were vague or misleading or confusing. Appellant's third assignment of error is not well-taken.
Appellant contends, in support of his fourth assignment of error, that he should not have been found guilty of the city income tax charge. Specifically, appellant argues that he did file an income tax return for the village of Swanton, and that since he did not have any profit from the Joe and Mary's Petland business, he had no obligation to include any information regarding his business on the income tax return.
The decision on this assignment of error does not require any analysis of appellant's arguments because in the course of carefully reviewing the record this court has found plain error in regard to the income tax charge filed against appellant. Appellant was charged by complaint on January 22, 1997. The caption on the complaint reads:
"THE STATE OF OHIO
"vs.
 "Jose H. Vasquez 209 W. Airport Hwy. Swanton, Ohio 43558
* * *"
The body of the complaint reads:
 "Complainant being duly sworn states that Mary Barker, at Village of Swanton, Fulton County, Ohio on or about April 30, 1996, did make an imcomplete [sic] false or fraudulent return, to wit: defendant did fail to declare income from a business as required by Section 35.05(B)(1)(b), Codified Ordinances of the Village of Swanton for the Village of Swanton income tax for tax year 1995, in violation of Section 35.15(A)(2), Codified Ordinances of Village of Swanton, and being a misdemeanor of the first degree."
The jury verdict returned on this charge states:
 "We, the Jury in this case, find the Defendant Jose H. Vasquez Guilty of the offense charged in the complaint."
The complaint attached to the complaint reads exactly as the complaint filed on January 22, 1997 read.
Crim.R. 3 governs filing criminal charges by complaint. Crim.R. 3 provides, in pertinent part:
 "The complaint is a written statement of the essential facts constituting the offense charged."
An essential element to the crime charged in this instance, is the identity of the person who filed an inaccurate or incomplete tax return with the village of Swanton. The complaint presented to the jury along with the verdict form identified Mary Barker, not appellant, as the person who failed to reveal income and expenses from the dog breeding business on an income tax return submitted to the village of Swanton. Nothing in the complaint alleges that Mary Barker is a business partner of appellant or is acting as an agent for appellant. Therefore, the complaint did not meet the requirements of Crim.R. 3. Appellant cannot be found guilty of a criminal offense another person is charged with committing.
We note there was a request filed by appellee for an amendment to the complaint. The request reads:
 "Now comes the State of Ohio, Village of Swanton, by and through counsel, and respectfully moves the Court for leave to amend the complaint herein and more correctly identify the section of the Village of Swanton income tax Code that defendant has violated.
 "Prosecutor has recently learned that this defendant did file an income tax return for 1995 but did not include any reference to business income from Mary and Joe's Petland. The specific section that defendant should be charged with is subparagraph (2) instead of (1).
 "No material allegations or elements of the offenses has been changed and such amendment will not prejudice defendant in any regard."
This amendment to the complaint still did not cure the fatal defect of naming Mary Barker as the person who committed the charged offense. Accordingly, appellant could not be convicted of the crime of failing to file an accurate income tax return with the village of Swanton. Appellant's fourth assignment of error is well-taken.
In support of his fifth assignment of error, appellant argues that because the trial court did not specify in its journal entry when it sentenced him for his crimes that his sentences were to be served consecutively or concurrently, this court must presume the sentences were to be served concurrently. He also states that the trial court has suspended more time than his entire sentence, so he cannot be ordered to serve jail time.
Appellee agrees that the sentencing judgment entry does not contain any statement regarding whether appellant is to serve the sentences consecutively or concurrently. Appellee refers this court to the transcript from the sentencing hearing when the trial judge indicated his intention that appellant serve the sentences consecutively, and argues that appellant can be compelled to serve jail time because not all of the jail time was suspended.
In Ohio, a court speaks only through its journal. HowerCorp. v. Vance (1945), 144 Ohio St. 443, 448. A judge's written or oral pronouncement is not recognized as an action of a court unless it is entered upon the journal. Boyle v. Pub. Adjustment Constr. Co. (1950), 87 Ohio App. 264, 268. In this case the trial court never specified on the journal whether the sentences it imposed upon appellant were to be served consecutively or concurrently. Appellant is correct that when no specification is made on the journal, the assumption must be made that the sentences are to be served concurrently. R.C. 2929.41. Accordingly, appellant's fifth assignment of error is well-taken.
In support of his sixth assignment of error, appellant argues that the trial court abused its discretion when it ordered him to forfeit ownership of all of his dogs as a condition of probation. Appellant argues that punishments for crimes are statutorily established by the legislature in Ohio. He argues that the statutory punishment for the crime of cruelty to animals does include forfeiture of ownership of the abused animal, but does not permit a trial court to order the forfeiture of ownership of animals when there is no conviction for cruelty to those animals.
An identical argument was made to the Fourth District Court of Appeal by a defendant who was convicted of abusing horses he owned. State v. Sheets (1996), 112 Ohio App.3d 1, 7-9. The Fourth District Court of Appeals rejected the argument stating:
 "A trial court may impose requirements on an offender as a condition of probation `in the interest of doing justice, rehabilitating the offender, and ensuring his good behavior.' R.C. 2951.02. A trial court has broad discretion in determining conditions of probation and will not be subject to reversal on appeal absent an abuse of that discretion. State v. Jones (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 "Appellant was convicted of ten violations of R.C. 959.13(A)(1), which provides that `no person shall * * * impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.' R.C. 959.99(D) states:
 "Whoever violates [R.C. 959.13(A)] is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this division, the proceeds from the sale shall first be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner. The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animals.
 "Appellant claims that the trial court abused its discretion by setting probationary conditions that exceeded the divesture power of R.C. 959.99(D). Appellant argues that R.C. 959.99(D) provides for the forfeiture of only `the animal or livestock' that was treated cruelly in violation of R.C. 959.13(A), rather than all animals or livestock that one who violates R.C. 959.13(A) possesses. Therefore, appellant claims that the trial court was only authorized, pursuant to R.C. 959.99(D), to order the divesture of ten of appellant's horses, rather than all one hundred twenty-two horses.
 "In State v. Jones, supra, the Ohio Supreme Court upheld a condition of probation that the defendant not associate or communicate with anyone under the age of eighteen. We note that the defendant in State v. Jones
could not have been barred from associating or communicating with minors as part of his sentence. State v. Jones demonstrates that conditions of probation may be imposed which were not authorized pursuant to sentencing. Rather than focussing exclusively on whether a condition of probation was authorized pursuant to the Revised Code for purposes of sentencing, `courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.' State v. Jones, 49 Ohio St.3d at 53.
 "We therefore reject appellant's assertion that the trial court was limited by R.C. 959.99(D) when it ordered divesture and other similar conditions as part of probation. The probationary conditions that appellant challenges certainly have a relationship to the crime of which he was convicted. Appellant failed to properly feed his horses and the probationary conditions deprive him of owning or possessing horses. The conditions also relate to future criminality by preventing appellant from being in a position, as owner or possessor of a horse, where he would have to feed a horse. Finally, the conditions relate to rehabilitation by impliedly permitting appellant to own and possess horses in the future. We therefore find that the trial court did not abuse its discretion in its formulation of conditions for appellant's probation. See State v. Drakulich
(September 30, 1992), 1992 Ohio App. LEXIS 5023, Portage App. No. 91-P-2352, unreported. Appellant's third assignment of error is overruled." Id.
We note that the Eighth and Tenth District Courts of Appeals have reached a different conclusion on the question of whether a trial court can impose a condition of probation that results in a greater penalty than the trial court could impose pursuant to the sentencing provisions for the crime the defendant is convicted of committing. See City of Independence v. Tector
(1996), 116 Ohio App.3d 359; City of Columbus v. Davis (May 30, 1991), Franklin App. No. 90AP-1423, unreported. Both courts ruled that a trial court may not impose a probation condition that indirectly enhances the statutorily maximum penalty for a crime.City of Independence v. Tector, 116 Ohio App.3d at 362; City ofColumbus v. Davis (May 30, 1991), Franklin App. No. 90AP-1423, unreported.
We agree with the analysis of the Fourth District Court of Appeals and conclude that a trial court can impose a condition of probation that exceeds the penalty that could be imposed for the crime as long as the condition for probation meets the three-part test established by the Supreme Court of Ohio in Statev. Jones (1990), 49 Ohio St.3d 51, 52 and is not an abuse of discretion. See, also, State v. Lusher (Nov. 7, 1997), Wood App. No. WD-97-006, unreported. We further conclude that under the facts of this case, the probation requirement that appellant forfeit all of his dogs does meet the three-part test from Statev. Jones, id., and is not an abuse of discretion.
First, the condition is reasonably related to rehabilitating the offender, since he will presumably be able to own dogs again once he has completed his probation. Second, the condition has a relationship to the crime he committed, failing to provide animals with adequate air and wholesome exercise. Third, the condition is related to future criminality and serves the statutory ends of probation since it will ensure that appellant has no further opportunity to commit cruelty to animals during the term of his probation. Appellant's sixth assignment of error is not well-taken.
In support of his seventh assignment of error, appellant argues that he was denied due process of law, due to the cumulative effect of errors made by the trial court in his case. He argues that the trial court committed three errors that denied him due process of law.
First, he argues that the trial court improperly required his trial counsel to present his arguments that a juror should be dismissed for cause in front of the jury. He says that the objectivity of the other jurors was tainted when they heard his attorney's arguments. He also says that he was forced to waste a preemptory challenge when the trial court refused to dismiss the juror for cause.
We have carefully reviewed the record and find no demonstrable prejudice to appellant with regard to the trial court's rulings on the issue of whether or not the potential juror in question should be dismissed for cause. Nothing in the record supports his assertions that the objectivity of the jurors was tainted when they heard the arguments presented by counsel that the potential juror should be dismissed for cause. In addition, he was not prejudiced when his counsel used a preemptory challenge to remove the potential juror, because he still had preemptory challenges left to use when his counsel expressed satisfaction with the composition of the jury and the case proceeded to trial.
Second, he argues that the testimony of a witness that ten German shepherd puppies in the home were not in good health prejudiced the jury. He admits that the jury acquitted him of cruelty to animal charges relating to the German shepherd puppies, but argues that the cumulative nature of the testimony inflamed the jury.
Once again, we find nothing in the record to support appellant's assertions. The witness in question works as an assistant to a veterinarian. She went to appellant's home as a customer, and purchased three dogs from appellant's business. She did give testimony regarding what she observed about the physical condition of ten German shepherd puppies she saw in appellant's home. However, when she made a conclusory statement that she thought the puppies were unhealthy, the trial court upheld an objection made by appellant's trial counsel, stating that more foundation was needed. Furthermore, we find the jury's acquittal of appellant on the charge of cruelty in relationship to the German shepherd puppies as clear proof the jury was not inflamed by the testimony.
Third, appellant argues that the trial court improperly allowed the agent for the Fulton County Humane Society to testify about the health of a dog in relationship to wholesome air. Appellant argues that the agent was not qualified as an expert and should not have been permitted to give opinion testimony.
The Supreme Court of Ohio has stated:
 "To qualify as an expert, the witness need not be the best witness on the subject. * * * The expert must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror. * * * A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. * * *" Scott v. Yates (1994), 71 Ohio St.3d 219, 221
(citations omitted).
An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151,157.
We have carefully reviewed the testimony of the agent from the Fulton County Humane Society and conclude that the trial court did not abuse its discretion when it permitted him to testify about the connection between wholesome air, exercise and the health of a dog. The agent testified he has worked with numerous veterinarians, has completed basic cruelty investigation courses and has worked with some animal behavoralists. He was therefore qualified to render the opinion he gave.
Even if the agent was not qualified to give the opinion that the dogs seized in appellant's home lacked wholesome air and exercise, appellant suffered no prejudice from his testimony. The Chief Dog Warden for Lucas County gave similar testimony without any objection from appellant. Therefore, appellant's seventh assignment of error is not well-taken.
The judgment of the Fulton County Court, Eastern Division, is affirmed in part and reversed in part. Pursuant to App.R. 12(B) we enter judgment finding appellant not guilty in Case No. 97-CRB-00037, on the charge of filing an incomplete, false or fraudulent tax return in violation of Section 35.15(A)(2), Codified Ordinances of the village of Swanton. Appellant and appellee are each ordered to pay one half of the court costs of this appeal.
Due to our disposition of appellant's fifth assignment of error, appellant cannot be compelled to serve any jail time. Due to our disposition of appellant's sixth assignment of error, this court certifies the record of this case to the Supreme Court of Ohio pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution. The question certified is whether a trial court can impose a requirement as a condition of probation that exceeds the punishment the trial court could impose under the statutorily established penalty for the crime for which a defendant is convicted.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
 Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] The charges for cruelty to animals were filed pursuant to R.C. 959.13
[2] The charge for filing an incomplete, false or fraudulent income tax return with the village of Swanton was filed pursuant to Section 35.15(A)(2) of the Codified Ordinances of the village of Swanton.