DECISION AND JUDGMENT ENTRY
This is an appeal from a January 22, 1999 judgment entry of the Lucas County Court of Common Pleas in which the trial court: 1) accepted jury verdicts finding appellant, Steven A. DeLauder II, guilty of two counts of rape, in violation of R.C. 2907.02(A)(2) and guilty of one count of attempt to commit rape, in violation of R.C.2923.02; and 2) sentenced appellant to consecutively serve two terms of nine years in prison for the two counts of rape and one term of seven years in prison for the count of attempt to commit rape. Appellant has presented two assignments of error for consideration on appeal that are:
"Assignment of Error #1
 APPELLANT REQUESTS THAT A NEW TRIAL BE GRANTED PURSUANT TO THE RIGHT TO COUNSEL GUARANTEE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPELLANT BELIEVES THAT TRIAL COUNSEL'S REPRESENTATION WAS INEFFECTIVE AND DID NOT INSURE TO HIM THIS CONSTITUTIONAL GUARANTEE.
"Assignment of Error #2
 THE TRIAL COURT ERRED IN REFERRING TO APPELLANT AS OFFENDER, NOT DEFENDANT WHILE INSTRUCTING THE JURY REGARDING THE WEIGHING OF TESTIMONY BY IDENTIFYING WITNESSES.
In support of his first assignment of error, appellant argues that he did not receive effective assistance of trial counsel for one reason. He says that his trial counsel failed to effectively cross-examine the complainant in this case regarding her consumption of alcohol, and the level of her inebriation when the events that led to appellant being charged with rape and attempt to commit rape took place.
He notes that he and the complainant gave conflicting testimony on the issue of whether she consented to sexual intercourse. She testified that he used force to compel her to submit to vaginal intercourse. He admitted at trial that he had sexual intercourse with the victim, but asserted as a defense to the criminal charges that she consented to the sexual intercourse.
Appellant argues: "Counsel did not ascertain whether there was any additional consumption of alcohol by Complainant that would have affected her ability to convey her desire not to engage in consensual intercourse." He says that the failure to fully explore on cross-examination the level of the complainant's intoxication fell below an objective standard of reasonable representation and prejudiced his case because there was no evidence "to explain the conflicting testimony pertaining to the issue of consent."
Appellee, the state of Ohio, responds that the issue of the complainant's intoxication was already raised through the testimony of a nurse who attended to the complainant when she was examined at the hospital following her allegations of rape. The nurse testified that she noticed the complainant had been drinking alcohol, and that the complainant admitted she had drunk some alcohol. The nurse also testified that the complainant's speech was clear and that she walked steadily.
Appellee further argues that when appellant took the stand and testified on his own behalf, he did not ever mention that the complainant lacked capacity to consent to sexual intercourse because she was too drunk. Instead, appellant testified that she carried on a conversation with him and that she had the ability to reject his sexual advances.
Appellee says that even if appellant's trial counsel could have shown that the complainant was too intoxicated to consent, the intoxication would not be a defense to a charge of rape. Appellee argues: "Also, if Appellant had shown the victim to be so intoxicated that she was unable to consent, then surely Appellant could not expect the jury to believe the penetrations were consensual."
Next, appellee argues that appellant's trial counsel pursued sound trial strategy by not further pursuing through cross-examination the level of the complainant's intoxication from alcohol. Appellee says appellant's trial counsel effectively presented appellant's case to the jury through an opening statement, cross-examination of the state's witnesses, direct examination of appellant, and a closing statement.
Finally, appellee says that even if appellant's trial counsel's representation somehow fell below an objective standard of reasonable representation, appellant cannot meet the second part of the test for showing ineffective assistance of trial counsel. Appellee says appellant has not shown how his case was prejudiced by the alleged error of his trial counsel.
The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
In addition, there is a presumption in Ohio that an attorney is competent. State v. Jackson (1980), 64 Ohio St.2d 107, 110-111. Applying these standards in this case, we agree with appellee that the requirements for ineffective assistance of counsel are not met in this case.
First, we agree with appellee that the decision of appellant's trial counsel not to further cross-examine the victim in this case on her consumption of alcohol did not fall below an objective standard of reasonable representation. The victim admitted on direct examination that she had drunk three or four beers at a party earlier in the evening, so the jury was already aware that she had consumed some alcohol. Nothing in the remainder of her testimony suggested that she was inebriated to a point where she did not remember what occurred when she encountered appellant later that evening or to a point where she could not clearly express to him whether or not she consented to sexual acts.
The victim clearly recounted details of the events that transpired, and clearly testified that she did not consent to any of the sexual acts that led to the charges of rape and attempted rape being filed against appellant, including vaginal intercourse, fellatio, and attempted anal sex. Instead, she testified that she tried to get away from appellant after he first found her sitting on the ground outside the back of a fast food restaurant where she had gone after having a verbal argument with her boyfriend.
She said that as she was walking back toward her boyfriend's apartment and was going through an opening in a privacy fence, appellant grabbed her hair and her arm and dragged her to an area between the privacy fence and another fence. She testified that she begged appellant to let her go, she struggled to get away and she tried to pull her pants back up after he pulled them down. She said that he then punched her in the face and body five times, that he pushed her to the ground, pulled her pants down and forced her to submit to vaginal intercourse. She kept begging him to stop, kept struggling to put her clothes back on to leave and kept asking him to let her go. She further testified that despite her attempt to get away after the vaginal intercourse and her repeated pleas for him to let her go, he pulled her back between the fences and forced her to perform oral sex on him. Finally, he bent her over one fence and unsuccessfully tried to have anal sex. Only after that did he let her go. We find that following that testimony, it would have been a vain act for appellant's trial counsel to attempt to get the victim to admit on cross-examination that she was too inebriated to be able to convey to appellant that she did not consent to his acts and that he employed sound trial strategy when he did not pursue that line of questioning.
Second, we find that even if the first part of the test for ineffective assistance of counsel were somehow established in this case, appellant has not demonstrated any prejudice to his case simply because his trial counsel did not further cross-examine the victim on her level of inebriation when she encountered appellant. The testimony of the victim's friends who saw her right after she fled appellant and returned to her boyfriend's apartment, of the police officer who responded to the 911 call and interviewed the victim, and of the nurse who gave her treatment at the hospital showed that while the victim was very upset and at times hysterical, and while she had the odor of alcohol on her breath and admitted to drinking beer earlier that night, there was no indication that she was inebriated or intoxicated to such an extent that she could not effectively communicate. Accordingly, there was sufficient other evidence presented by appellee to show that the victim was not so inebriated from consumption of alcohol that she could not effectively communicate with appellant concerning whether or not she consented to have sexual intercourse with him. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that the trial court erred when it gave the following jury instruction:
 "Some things you may consider in weighing the testimony of identifying witnesses are:
 Capacity of the witness, that is, the age, intelligence, defective senses, if any, and the opportunity of the witness to observe;
 the witness's degree of attention at the time he or she observed the offender; the accuracy of the witness's prior description or identification, if any; whether the witness had occasion to observe the defendant in the past; the interval of time between the event and the identification; all surrounding circumstances under which the witness has identified the defendant.
 "If after examining the testimony of the identifying witness you are not convinced that the offender [sic] is the offender, you must find the defendant not guilty." (Emphasis added).
Appellant says that: "The reference by the trial court to Appellant as `offender' can certainly be interpreted as an implied conclusion of the court." He says that he was prejudiced because the above quoted instruction suggested to the jury that the judge in this case believed appellant was an offender.
First, we note that the record shows that appellant did not object to the jury instructions at trial. Since no objection was raised at trial, any error associated with the now complained of jury instruction is waived, unless the error rises to the level of plain error. See, e.g., State v. Adams (1980), 62 Ohio St.2d 151,153; 404 N.E.2d 144; State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph one of the syllabus. Plain error is defined as:
 "[O]bvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great
 public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records,
 palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221 (quoting United States v. Atkinson (1936), 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391.
In addition, jury instructions must be viewed as a whole to determine whether they are prejudicial. Wagenheim v. AlexanderGrant Co. (1983), 19 Ohio App.3d 7, 16, 482 N.E.2d 955.
After carefully reviewing the jury instructions in their entirety, we conclude that the complained of instruction does not rise to the level of plain error. The instruction singled out by appellant is only one instruction relating to the duty of the jury to assess the credibility of the witnesses who testified at trial. When viewed as a whole, the instructions clearly do not signal the jury that the judge has determined that appellant is an offender. Instead, the instructions directed the jury to use "the tests of truthfulness which you apply in your daily lives." The court then enumerated several of those tests, including:
 "the appearance of each witness upon the stand; his or her manner of testifying; the reasonableness of the testimony; the opportunity he or she had to see, hear and know the things concerning which he or she testified; his or her accuracy of memory;
 frankness or lack of it; intelligence, interest, and bias, if any; together with all the facts and circumstances surrounding the testimony."
The court further instructed the jury that they were not required to believe the testimony of any witness just because the witness was under oath, and that they alone had the power to decide what testimony was credible. Furthermore, the court specifically instructed the jury:
 "If during the course of the trial the Court said or the Court did anything that you consider an indication of the Court's view on the facts, you are instructed to disregard it."
In addition, we note that appellant did not contest his identity as the person who had vaginal intercourse on the ground between two fences with the victim on August 1, 1998; indeed, before trial he and appellee filed a stipulation that he did have vaginal intercourse with the victim on August 1, 1998 and that DNA test results confirmed that he could not be excluded as the source of semen on the vaginal swab taken from the victim on August 1, 1998. During trial, he took the stand and testified that he and the victim had consensual vaginal intercourse on August 1, 1998.
He testified that he met the victim after fleeing from a nearby hotel where he had been involved in a scuffle. He had a split lip from the scuffle, and was running because a security guard at the hotel indicated he was going to call the police. He said he quit running because he was too drunk and too tired to keep running, and he noticed the victim sitting on the ground with her back against the back wall of a fast food restaurant. He said they commiserated about their difficult relationships since he just had a fight with his girlfriend while on the phone at the hotel, and she just had a fight with her boyfriend. He said she began kissing him and one thing led to another and they began walking together to his place. However, they decided to have vaginal intercourse on the ground between two fences, and when they were done, she fled saying she could not "do this to my boyfriend." He said he then walked home without his shirts, which he had placed on the ground for her to lay on, and went to sleep on the couch after his roommate let him into the apartment.
Appellant therefore removed all doubt that he was the man who had sexual contact with the victim on the night of August 1, 1998 and the identity of that person was no longer an issue. The only issue that remained was whether or not the sexual activity was consensual, and the jury instruction on determining the identity of the person who had the sexual encounter with the victim was not prejudicial. Appellant's second assignment of error is not well-taken.
After carefully reviewing the record and considering the assignments of error presented by the parties on appeal, we conclude that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
Peter M. Handwork, J., Melvin L. Resnick, J., James R. Sherck, J., CONCUR.