OPINION
Plaintiff-appellant Albert L. Moore, Administrator of the Estate of Lynnette Twaddle, appeals the January 4, 2001 Judgment Entry of the Stark County Court of Common Pleas which entered judgment in favor of defendants-appellees Alliance Obstetrics, Inc. and David Robinson, M.D.
 STATEMENT OF THE CASE AND FACTS
On August 1, 1997, Lynnette Twaddle died from a bilateral pulmonary embolism. Approximately three weeks before her death, on July 9, 1997, appellee Dr. Robinson performed a vaginal hysterectomy on the decedent at Alliance Community Hospital. Before the surgery, decedent signed a consent form which listed emboli (blood clot) as a complication or risk of the surgery. Further, the decedent initialed an information form showing blood clots to be a risk of the surgery.
The decedent was discharged from Alliance Community Hospital on July 10, 1997, and was told to follow up with her physician in three weeks. One week after the surgery, the decedent contacted appellee's office because she did not feel well. On July 31, 1997, the decedent went to appellee's office for her postoperative examination. That day, appellee's office recorded the decedent was experiencing chest pains, chest tightness, shortness of breath, gasping, weakness, and a feeling that she might pass out. Dr. Robinson conducted an examination of the decedent and told her the symptoms were from anxiety. Dr. Robinson told the decedent to return in one year. The next day, the decedent died from a bilateral pulmonary embolism.
On July 26, 1999, appellant filed this medical malpractice action alleging appellee Dr. Robinson fell below the standard of care in his postoperative care and treatment of the decedent. The matter proceeded to a jury trial on November 28, 2000.
At trial, appellant presented the testimony of two medical experts David Kanarek, M.D., a pulmonalogy expert from Massachusetts General Hospital, and Michael Berke, M.D., an obstetrician-gynecologist from Detroit.
Dr. Kanarek testified a vaginal hysterectomy was a risk factor for the decedent developing a pulmonary embolism. Dr. Kanarek further testified the "danger signs" exhibited in appellee's office the day before her death were "very significant."[1] Dr. Kanarek opined Dr. Robinson should have conducted a bone scan which would have almost certainly yielded an abnormal result. Thereafter, Dr. Kanarek opined the decedent should have received a blood thinner which would have prevented further clotting and prevented the fatal embolism. Dr. Kanarek stated Dr. Robinson was negligent in failing to take these actions, proximately causing the decedent's death.[2]
Dr. Berke also testified the decedent's hysterectomy was a risk factor for the development of pulmonary embolism. Dr. Berke agreed with Dr. Kanarek the symptoms she exhibited in appellee's office indicated a pulmonary embolism. Dr. Berke opined appellee fell below the standard of care in not examining the decedent's legs, where many pulmonary emboli begin. Dr. Berke also found appellee should be found negligent because he failed to run any test or refer the decedent to a specialist for an evaluation. Dr. Berke further opined appellee's negligence proximately caused the decedent's death.[3]
For evidence on the standard of care, appellees presented the testimony of Dr. Robinson; Dr. Philip Buescher, a board certified pulmonalogist; Dr. William Cook, a board certified obstetrician and gynecologist; Dr. John Karlen, a board certified obstetrician and gynecologist; and Dr. Leo Williams, a pathology expert.
Dr. Buescher testified he had never seen a patient develop a pulmonary embolism after a hysterectomy. Further, Dr. Buescher opined Dr. Robinson met the standard of care in his treatment of the decedent even though he did not order a lung scan or obtain a pulmonary consult.
Dr. Cook also testified Dr. Robinson performed within the standard of care of a reasonably prudent board certified obstetrician gynecologist. Dr. Cook opined Dr. Robinson's informed consent form for the hysterectomy met the standard of care and that Dr. Robinson's clinical evaluation of the decedent the day before her death met the standard of care because she did not have signs of pulmonary embolism.
Dr. Karlen, the chairman of the department of obstetrics and gynecologist at Akron City Hospital, testified Dr. Robinson met the standard of a care of a reasonably prudent board certified obstetrician. Dr. Karlen testified he had never seen a patient develop a pulmonary embolism as a result of hysterectomy. Further, Dr. Karlen testified the decedent had none of the risk factors for the pulmonary embolism. Dr. Karlen opined Dr. Robinson's diagnosis of anxiety met the standard of care. Further, Dr. Karlen testified Dr. Robinson was not required to order a lung scan in order to meet the standard of care and the administration of a blood thinner on July 31, 1997 would not have prevented the pulmonary embolism.
After hearing all the evidence, the jury returned a verdict for appellees. In a January 4, 2001 Judgment Entry, the trial court memorialized the verdict entering judgment in favor of appellees.
It is from this judgment entry appellants prosecute their appeal, assigning the following as error:
 THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT WAS PROHIBITED FROM RETROSPECTIVELY EXAMINING THE APPELLEES' CONDUCT.
 THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING SURPRISE EXPERT TESTIMONY WHICH THE APPELLEES FAILED TO DISCLOSE IN VIOLATION OF CIV. R. 26(E)(1)(b).
 THE TRIAL COURT ERRED BY ADMITTING INCOMPETENT EXPERT TESTIMONY.
 I
In his first assignment of error, appellant maintains the trial court erred in instructing the jury it was prohibited from retrospectively examining appellees' conduct.
On November 27, 2000, appellees filed their proposed jury instructions. Appellees set forth the following proposed jury instruction:
 When examining the conduct of the defendant, with respect to the standard of care, the conduct or care should be judged prospectively, looking forward in time. The care and conduct of the defendant must be judged in light of the circumstances apparent to him at the time, and not by looking backward retrospectively "with the wisdom born of the event." [sic] The standard is one of conduct, and not of consequences.
For this proposition of law, appellees gave the following citation "See, Green v. Sibley Lindsey and Curr Co. (1931), 57 N.Y. 190,177 N.E. 416.
At trial, and outside the jury's presence, the trial court heard objections to the proposed jury instructions. At that time, the following exchange took place on the record:
 THE COURT: Now, with respect to the Jury instructions, it's the Court's instruction that you have agreed on all the Jury instructions which with respect to, you have agreed as to all of the proposed Jury instructions with the exception of one paragraph in the instructions.
 The Court has taken a look at that paragraph and the Court will, the Court has modified it as follows: When examining the conduct of the Defendant with respect to the standard of care, the conduct or care should be judged prospectively looking forward in time.
 The care and conduct of the Defendant must be judged in light of the circumstances at the time and not by looking backward retrospectively period.
 MR. OKEY: The Plaintiff will object to the instructions as read by the Court on the grounds that it is confusing in terms of the Jury because the Jury sitting through years after the girl's death, the only way that they can possibly look at the case is backward in time and it —
 THE COURT: No, you misunderstood. It started out, prefaces by saying when examining the conduct of the Defendant with respect to the standard of care, the conduct or care should be judged prospectively, looking forward in time.
 MR. OKEY: I understand that, Your Honor, and it's the Plaintiff's position that it is confusing to the Jury and internally inconsistent and also —
THE COURT: How is it internally inconsistent?
 MR. OKEY: Because it tells the Jury that they are to examine the conduct of the Defendant but they are not allowed to look backward in time, but here we are sitting three years later and that's the time way to look at the case is backward in time for the Jury.
And I believe it's internally inconsistent.
 I also believe, Your Honor, that the portion of the charge relating to standard of care covers this when —
THE COURT: Well, let me ask you something, Mr. Okey.
MR. OKEY: Yes, ma'am.
 THE COURT: Isn't the standard of care, in fact, not 20/20 hindsight but rather what was known at the time?
Isn't that, in fact, what we're here talking about?
 MR. OKEY: Yes, Your Honor, and that is covered within the provisions of the instruction I believe on page 7. And if I could quote, that there is — excuse me, the second full paragraph, beginning the second sentence "The existence of a physician/patient relationship places on the physician the duty to act as what a physician of ordinary skill and diligence under like or similar conditions or circumstances."
 And it is the Plaintiff's position that that instruction clearly sets forth what the Jury is to look at under like or similar conditions or circumstances as they existed at that time.
 THE COURT: Well, it doesn't say that though. This makes it clearer. This added language makes it clearer.[4]
The trial court actually gave the jury the following instruction:
 When examining the conduct of the defendant, with respect to the standard of care, the conduct or care should be judged prospectively, looking forward in time. The care and conduct of the defendant must be judged in light of the circumstances apparent to him at the time, and not by looking backward retrospectively.
A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced.[5] Requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction.[6] However, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles.[7]
A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.[8]
In Cincinnati v. Pub. Util. Comm.,[9] the Ohio Supreme Court set forth the standard for what constitutes a prudent decision, i.e. the standard of care:
 `[O]ne which reflects what a reasonable person would have done in light of conditions and circumstances which were known or reasonably should have been known at the time the decision was made.' The standard contemplates a retrospective, factual inquiry, without the use of hindsight judgment, into the decision making process of the utility's management.[10]
We find the jury instruction as given by the trial court in this case was ambiguous and confusing. The jury is told to judge appellee's conduct or care prospectively looking forwards in time are then told to judge appellee's care and conduct in light of the circumstances at that time, not retrospectively. Notions of further, present, and past injury are all mentioned in the instruction. The jurors are instructed to judge appellee's conduct and/or care "at the time" while "looking forward." They are told not to look back retrospectively when the standard contemplates retrospective, factual inquiry. Though we believe we understand the intent of the instruction, we find a jury could easily be confused by it. After reviewing the jury charge as a whole, we find the jury charge probably mislead the jury in a matter materially effecting appellant's substantial rights. Accordingly, appellant's first assignment of error is sustained.
 II, III
In light of our disposition of appellant's first assignment of error, appellant's second and third assignments of error are moot.
The January 4, 2001 Judgment Entry of the Stark County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion and law.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the January 4, 2001 Judgment Entry of the Stark County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion and law. Costs assessed to appellees.
By: Hoffman, P.J., Wise, J. and Boggins, J. concur.
[1] Tr. at 345.
[2] Tr. at 345, 353.
[3] Tr. at 434.
[4] Tr. at 110-113.
[5] Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12, 19 OBR [ 696 N.E.2d 613] 8, 10, 482 N.E.2d 583, 585.
[6] Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591,575 N.E.2d 828, 832.
[7] Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690,591 N.E.2d 762, 769-770.
[8] Ohio Farmers Ins. Co. v. Cochran (1922), 104 Ohio St. 427,135 N.E. 537, paragraph six of the syllabus; Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 19 OBR 71, 482 N.E.2d 955.
[9] Cincinnati v. Pub. Util. Comm. (1993), 67 Ohio St.3d 523,530, 620 N.E.2d 826, 830.
[10] Citations omitted.